## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| STATE OF CALIFORNIA, | ) | |
| STATE OF FLORIDA, and | ) | |
| STATE OF NEW JERSEY, | ) | |
| | ) | |
| ex rel., PAUL DENIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 11-684-RGA |
| | ) | |
| MEDCO HEALTH SOLUTIONS, INC., | ) | |
| and EXPRESS SCRIPTS HOLDING | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Jeffrey S. Goddess, Esquire and P. Bradford deLeeuw, Esquire of Rosenthal, Monhait & Goddess, P.A., Wilmington, Delaware. Counsel for Plaintiffs. Of Counsel: David S. Stone, Esquire (argued) of Stone & Magnanini LLP, Berkeley Heights, New Jersey.

Jack B. Blumenfeld, Esquire and Rodger D. Smith II, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendants. Of Counsel: Enu Mainigi, Esquire, Holly Conley, Esquire, D. Keith Clouser, Esquire and Craig D. Singer, Esquire (argued) of Williams & Connolly LLP, Washington D.C.

## MEMORANDUM OPINION

Dated: January 5, 2017
Wilmington, Delaware

ANDREWS, United States District Judge:

Relator Paul Denis brings this *qui tam* action against Defendants Medco Health Solutions, Inc. and its parent, Express Scripts Holding Company (collectively, "Medco") alleging violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729-33, and analogous state statutes. Medco has moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1). Specifically, Medco claims that the court lacks subject matter jurisdiction pursuant to two provisions of the FCA: 31 U.S.C. § 3730(e)(4) (the "public disclosure bar") and 31 U.S.C. § 3730(b)(5) (the "first-to-file rule"). If the court finds that it has subject matter jurisdiction over this action, Medco argues that Denis' complaint should still be dismissed for failure to state a claim as required by Fed. R. Civ. P. 12(b)(6), and failure to plead fraud with specificity as required by Fed. R. Civ. P. 9(b).

The court has original jurisdiction over the federal law claims pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a), and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 and 31 U.S.C. § 3732(b). For the following reasons, the court finds that it lacks subject matter jurisdiction over this case. Accordingly, Medco's motion is granted and the complaint is dismissed without prejudice.

## I.     BACKGROUND

### A.  Procedural History

On August 3, 2011, Denis filed his original complaint under seal on behalf of the United States of America. (D.I. 2). On June 6, 2013, Denis filed his first amended complaint adding details regarding the purportedly false claims and noting that, since filing the original complaint, Medco had merged with Express Scripts. (D.I. 16). On October 11, 2013, Denis filed a second amended complaint adding state law claims and, as nominal plaintiffs, the states of California, Florida, New York, and New Jersey. (D.I. 28). The United States and California notified the court

1

of their decision not to intervene. (D.I. 21, D.I. 47). New York voluntarily dismissed its claims. (D.I. 31). Florida and New Jersey have not filed a notice of intervention or declination. On June 5, 2015, the court unsealed the case. (D.I. 55). Denis filed a third amended complaint on October 22, 2015, which is the operative complaint in this action. (D.I. 78). The third amended complaint removed New York as a nominal plaintiff and any related allegations. (*Id*.). It also added allegations related to Denis' personal knowledge of the purportedly false claims. (*See, e.g., id*. at ¶¶ 20-21, 108, 111, 117). Medco's motion to dismiss followed.

## B. The Parties

Medco is a pharmacy benefit manager, or "PBM." It provides services to health plans and their enrollees by administering pharmacy benefits, processing pharmacy claims, developing formularies, and negotiating with pharmaceutical manufacturers to obtain rebates for health plan sponsors. (D.I. 78 ¶ 8; D.I. 81-1, Ex. 2 ¶¶ 33-34). Medco's clients include health plans with enrollees receiving medical benefits through Medicaid, Medicare Part D, Medicare + Choice, the Retirement Drug Subsidy program, and government employers. (D.I. 78 ¶ 9; D.I. 81-1, Ex. 2 ¶ 38).

Denis was hired by Medco in 1992 as a Director of Special Drug Purchasing, a title that later changed to Director of Pharmaceutical Contracting. (D.I. 78 ¶ 46). In 1995, Denis was promoted to Vice President of Pharmaceutical Contracting, a position in which he remained until becoming a Vice President in Employer Sales in 2007. (*Id*.). Denis left Medco in November 2008. (*Id*. at ¶ 48).

## C. Previous False Claim Allegations Against Medco

In 1990, Congress enacted the Medicaid Rebate Act, 42 U.S.C. § 1396r-8, often referred to as the "Best Price" program, to address the fact that Medicaid was routinely paying more for

2

prescription drugs than other large buyers. (D.I. 81-1, Ex. 1 ¶ 58; *id.*, Ex. 2 ¶ 21). Pursuant to the Medicaid Rebate Act, participating manufacturers who want their drugs covered by Medicaid must enter into a rebate agreement with the Secretary of Health and Human Services. (D.I. 81-1, Ex. 2 ¶ 22). The rebate agreement requires manufacturers to pay a quarterly rebate to each participating state. The rebate is calculated as the product of: (a) the number of drug units paid for by the state; and (b) a certain percentage of the average manufacturer price, or the difference between the average manufacturer price and the best price, whichever is greater. (D.I. 81-1, Ex. 1 ¶ 59 (citing 42 U.S.C. § 1396r-8(c)(l))). "Best price" is defined as "the lowest price available" from the manufacturer "inclusive of cash discounts, free goods, volume discounts, and rebates." (D.I. 81-1, Ex. 2 ¶ 26).

Several years before Denis sued, multiple civil complaints and news reports alleged that pharmaceutical manufacturers paid kickbacks to PBMs, including Medco, in exchange for PBMs favoring certain drugs, and the PBMs disguised the kickbacks as something other than rebates to avoid sharing the disguised rebates with clients, as required. (D.I. 81-1, Exs. 1-5; D.I. 81-2, Exs. 6-8; D.I. 81-3, Exs. 9-10; D.I. 81-4, Exs. 10-11; D.I. 81-5, Exs. 12-18). Two of the civil complaints naming Medco as a defendant were the *qui tam* actions captioned *United States ex rel. Schumann v. Medco*, No. 03-CV-5423 (E.D. Pa.) (hereinafter *Schumann*); and *United States ex rel. Hunt, et al. v. Merck-Medco Managed Care L.L.C.*, No. 00-CV-737 (E.D. Pa.) (hereinafter *Hunt*).[1]

---

[1]    The other civil cases against Medco were: *Horizon Blue Cross Blue Shield of N.J. v. Medco Health Solutions, Inc.*, No. BER-L-9581-04 (N.J. Super.); *Grp. Hospitalization & Med. Servs. v. Merck-Medco Managed Care LLP*, No. CAM-L-4144-03 (N.J. Super.); *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, No. 01-12257 (D. Mass); *Jones v. Merck-Medco Managed Care, LLC*, No. 02-0707 (D. Nev.); *West Virginia. ex rel. McGraw v. Medco Health Solutions, Inc.*, No. 02-CV-2944 (W. Va. Cir. Ct). (*See* D.I. 81-2, Ex. 6; D.I. 81-3, Ex. 9; D.I. 81-4, Ex. 11; D.I. 81-5, Exs. 12-13). I am not going to elaborate on the claims in these complaints, except where needed in the analysis, because the relevant allegations are essentially redundant of the claims in *Schumann* and *Hunt*.

In the *Schumann* litigation, the relator alleged that "Medco and the AstraZeneca Defendants entered into a series of sham contracts, and amendments thereto, for purchase discounts to Medco . . . in exchange for Medco's agreement to purchase Prilosec® and Nexium® for dispensing as the exclusive proton pump inhibitor ('PPI') drugs in its mail service pharmacies and for preferred placement on its formularies, including formularies used by Government Programs." (D.I. 81-1, Ex. 2 ¶ 119). "Government Programs" was defined as any federal or state health plan used to pay benefits in whole or in part, including Medicaid, Medicare, and Medicare Part D. (*Id*. at ¶¶ 38-39). As a result of the sham contracts, the best price for Prilosec and Nexium "did not reflect the purchase discounts on those drugs that the AstraZeneca Defendants sought to conceal . . . ." (*Id*. at ¶ 117). Finally, the relator alleged that AstraZeneca paid the disguised rebates to Medco pursuant to the sham contracts "from 1996 through at least 2007, and perhaps continuing thereafter." (*Id*.).

In the *Hunt* litigation, the relators primarily alleged that Medco had engaged in several fraudulent practices when filling prescriptions, including cancelling and destroying prescriptions, billing patients for drugs they never ordered, and creating false records of contact with physicians. (D.I. 81-1, Ex. 3 ¶ 1). But the relators also alleged that Medco had violated the Anti-Kickback Statute by soliciting and receiving inducements from pharmaceutical manufacturers to favor their products. (*Id*.). When asked during discovery to elaborate on the inducements Medco allegedly solicited, Hunt responded that:

> Medco has received both rebate and non-rebate payments from manufacturers. .
> . . In client contracts, Medco is obliged to pass through a percentage (sometimes
> 100%) of formulary rebates collected . . . . The amount of money collected from
> manufacturers that Medco must pass on to health plan clients, including those
> with federal contracts, depends on how payments are categorized by Medco and
> the manufacturer. By entering into non-rebate agreements with manufacturers,
> or by constructing agreements allocating some rebate payments to a non-
> formulary bucket, Medco is able to retain a larger share of the total it collects

4

from manufacturers. To the extent these payments were made to, and accepted by, Medco to induce it to enter into rebate contracts, or solicited by Medco to induce drug manufacturers to enter into rebate contracts, the payments constituted kickbacks.

(D.I. 81-1, Ex. 4 at pp. 61-62).

In 2006, the government intervened in both the *Hunt* and *Schumann* litigation as to Medco and entered into settlement agreements to resolve those claims. (D.I. 80 at 4-5). Contemporaneous with the settlements, Medco entered into a corporate integrity agreement ("CIA") with the Office of Inspector General of the Department of Health and Human Services and the Office of Inspector General of the Office of Personnel Management. (D.I. 78 ¶ 13). Under the CIA, Medco was required to monitor and track all "focus arrangements," a term defined as all arrangements under which "compensation or remuneration is received by Medco from or on behalf of a pharmaceutical manufacturer, including but not limited to, rebates, regardless of how categorized, market share incentives, commissions, fees under products and services agreements, fees received for sales utilization data and administrative or management fees." (*Id.* at ¶ 15). The definition of "focus arrangements" specifically excluded "purchase discounts based upon invoiced purchase terms." (*Id.* at ¶ 16).

## D. Relator's False Claim Allegations

According to Denis, in 2005, Medco had simultaneously executed two agreements with AstraZeneca that artificially divided the price reductions for Nexium. (*Id.* at ¶ 22). The first agreement provided that AstraZeneca would pay rebates to Medco's customers to place Nexium on their formularies. (D.I. 84 at 2; D.I. 78 ¶ 22). The second agreement separated out a portion of the rebates and re-characterized them as "purchase discounts," which Medco retained for itself. (D.I. 84 at 2; D.I. 78 ¶¶ 22, 25).

5

Denis alleges that at the time Medco executed the CIA in 2006, it "knew it had existing agreements with AstraZeneca pursuant to which rebate payments were intentionally mischaracterized as purchase discounts." (D.I. 78 ¶ 21). As a result, Medco "knowingly inserted the purchase discount exclusion into the CIA to allow it to continue the deceptive practice of disguising the rebates it received from manufacturers as purchase discounts." (*Id.*). In 2007, Medco renewed the agreements for Nexium and executed similar agreements for Toprol-XL. (*Id.* at ¶¶ 23, 26). Thus, Denis' third amended complaint alleges that Medco violated the terms of the CIA by "engaging in precisely the same type of deceptive and fraudulent conduct which led to the CIA." (*Id.* at ¶¶ 32-33).

### E. The DiMattia Actions

When Denis filed his original complaint in 2011, another *qui tam* action captioned *United States ex rel. DiMattia, et al. v. AstraZeneca LP*, C.A. No. 10-910-SLR (D. Del.) (hereinafter *DiMattia I*) was already pending.[2] (D.I. 81-5, Ex. 18). It alleged similar false claims as those alleged here, but named only AstraZeneca as a defendant. For example, the relator in *DiMattia I* alleged that, "from 2004 to the present," AstraZeneca paid "hundreds of millions of dollars" in illegal financial inducements to Medco in order to obtain favorable positioning of Nexium on Medco's formulary, thereby avoiding its best price obligations. (*Id.* at ¶ 2). The relator also alleged that, in 2007, AstraZeneca agreed to pay Medco additional kickbacks to maintain Nexium's preferred placement on Medco's formulary. (*Id.* at ¶ 72). The exhibits to the complaint are AstraZeneca's internal presentations showing that AstraZeneca called these additional kickbacks "purchase discounts," and paid them for the promotion of both Toprol-XL and Nexium.

---

[2]     The *DiMattia I* complaint was filed on October 25, 2010.

(D.I. 81-5, Ex. 18).[3] Finally, the relator alleged that AstraZeneca "fraudulently disguised the additional Nexium discounts by providing in-kind kickbacks to Medco via steep discounts in several of AZ's more 'mature' drugs, including Toprol XL, Prilosec, and Plendil. . . ." (*Id.* at ¶ 73). On July 24, 2013, the relators in *DiMattia I* filed an essentially identical complaint against Medco captioned, *United States ex rel. DiMattia, et al. v. Medco Health Solutions, Inc.*, C.A. 13-1285-RGA (D. Del.) (hereinafter *DiMattia II*).

In January 2015, the United States intervened in *DiMattia I* for purposes of settlement. (*DiMattia I*, D.I. 32). The complaint was unsealed on February 10, 2015 and voluntarily dismissed on March 3, 2015. (*DiMattia I*, D.I. 40, 43). The *DiMattia II* complaint was unsealed on May 19, 2015 and voluntarily dismissed the next day. (*DiMattia II*, D.I. 17). Several months later, Denis filed his third amended complaint. (D.I. 78).

## II. STANDARD OF REVIEW

The party asserting subject matter jurisdiction has the burden of proving its existence. *Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015). "Challenges to subject matter jurisdiction under Rule 12(b)(1) may be facial or factual." *Id.* (quoting *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009)). A facial attack contests the sufficiency of the pleadings, whereas a factual attack contests the sufficiency of jurisdictional facts. *Id.* In reviewing a facial attack, the court considers only the allegations in the complaint and any documents referenced in or attached to the complaint, in the light most favorable to the plaintiff. *Church of Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). In contrast, when reviewing a factual attack, the court may weigh and consider evidence outside

---

[3]     Exhibit 18 is 118 pages long. After the first 97 pages of the complaint, the next two pages, for example, describe "purchase discounts."

7

the pleadings. *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Finally, in a factual challenge, "no presumptive truthfulness attaches to plaintiff's allegations." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In this case, Medco's jurisdictional challenge is factual in nature, as it concerns not an alleged pleading deficiency, but the failure of Denis' claims to comport with the jurisdictional prerequisites contained in *qui tam* provisions of the FCA. *See, e.g., United States ex rel. Gohil v. Sanofi-Aventis U.S. Inc.*, 96 F. Supp. 3d 504, 510 (E.D. Pa. 2015) (assertion that relator has not complied with the jurisdictional prerequisites contained in the FCA is a factual attack on subject matter jurisdiction); *In re Plavix Mktg., Sales Practices & Prod. Liability Litig.*, 123 F. Supp. 3d 584, 594 (D.N.J. 2015) (stating that motion to dismiss for lack of subject matter jurisdiction based on the public disclosure bar of the FCA is a factual attack).

## III. DISCUSSION

The FCA makes it unlawful for any person to knowingly present, or cause to be presented, to the government a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A); *United States ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 331–32 (3d Cir. 2005). Under the *qui tam* provisions of the FCA, private citizens, acting as "relators," can file a civil action on the government's behalf to recover money the government paid on account of false or fraudulent claims. 31 U.S.C. § 3730(b)(1). If the *qui tam* action is successful, the relator receives a portion of the recovery. 31 U.S.C. § 3730(d). Accordingly, the FCA must "strike a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits." *Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 281 (2010).

To strike the appropriate balance, the FCA contains several limits on the court's subject matter jurisdiction, two of which Medco invokes—31 U.S.C. § 3730(e)(4) (the "public disclosure

bar") and 31 U.S.C. § 3730(b)(5) (the "first-to-file rule"). (D.I. 80 at 2-12). The public disclosure

bar was amended in 2010, and those amendments are considered here, because courts apply the

version of the statute that was in effect "at the time the alleged conduct in the Complaint took

place." *United States ex rel. Judd v. Quest Diagnostics*, 638 F. App'x 162, 165 (3d Cir. 2015). For

the reasons explained below, the court concludes that the pre-2010 version of the public disclosure

bar applies to Denis' third amended complaint. The court also concludes that both the public

disclosure bar and the first-to-file rule, each independently, deprive this court of subject matter

jurisdiction.

## A. Pre-2010 Version of the Public Disclosure Bar

For the purposes of this lawsuit, the most significant effect of the amendment to the public

disclosure bar is that allegations regarding pre-2010 conduct are reviewed under the Fed. R. Civ.

P. 12(b)(1) standard, but allegations regarding post-2010 conduct are reviewed under the Fed. R.

Civ. P. 12(b)(6) standard. *See United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries,*

*LLC*, 812 F.3d 294, 297 (3d Cir. 2016). As a result, no presumption of truthfulness attaches to

pre-2010 allegations, but post-2010 allegations receive the benefit of every reasonable inference.

*See Harris v. Kellogg Brown & Root Servs., Inc.*, 724 F.3d 458, 464 (3d Cir. 2013) (explaining

that, in a factual challenge under Fed. R. Civ. P. 12(b)(1), "no presumption of truthfulness attaches

to plaintiff's allegations"); *Tri-Cty. Concerned Citizens Ass'ns v. Carr*, 47 F. App'x 149, 150 (3d

Cir. 2002) (explaining that, under Fed. R. Civ. P. 12(b)(6), a plaintiff "is given the benefit of all

reasonable inferences that can be drawn from the allegations in the complaint").

Denis claims that he is proceeding under both versions of the public disclosure bar, because

he alleges fraudulent conduct "over ten years," and there is no proof that it has stopped. (*See* D.I.

91 at 1). In the third amended complaint, however, all non-conclusory allegations of fraudulent

9

conduct occurred between 2005 and 2007. (*See* D.I. 78 ¶¶ 21-23, 26, 47, 109, 111, 113-14, 119-20, 124, 132, 135). When pressed at oral argument to identify a single allegation in the complaint post-dating 2010, Denis cited paragraph 129. (D.I. 98 at 26). But this paragraph simply describes a conversation between Denis and Regina Davis, a Vice President at Medco. It does not allege when the conversation occurred and there is nothing about the conversation itself that would suggest it occurred at a particular time.[4]  Denis explained at oral argument that Davis "took over" Denis' responsibilities after he left the company. (*Id.*). This fact was not alleged in the complaint itself. Even if it had been, it still would not mean that the conversation occurred after 2010, because Denis left the company in November 2008. (D.I. 78 ¶ 48).

Finally, Denis cited several paragraphs in the third amended complaint where he alleges that Medco's conduct "violated, and no doubt continue[s] to violate" the FCA. (*Id.* (citing D.I. 78 ¶¶ 155, 184-85, 190-91, 196-97)). Giving these allegations the benefit of every reasonable inference would not help Denis, because it is not reasonable to infer, as Denis suggests (*see* D.I. 91 at 1), that what occurred in 2007 continues indefinitely, until proven otherwise. *See United States ex rel. Galmines v. Novartis Pharms. Corp.*, 88 F.Supp. 3d 447, 457-58 (E.D. Pa. 2015) (requiring "well pleaded factual allegations" to support the time scope of the scheme). Accordingly, the court will apply the pre-2010 version of the public disclosure bar.

---

[4]    The paragraph states in relevant part: "Relator had a conversation with Ms. Regina Davis, a Vice President at Medco responsible for providing auditors . . . with backup documentation, in which Relator confirmed that Ms. Davis followed the same procedure as Relator had been instructed to follow, which was to only provide auditors with contracts containing provisions for rebates that were passed through to the clients, and not to provide other contracts that related to monies Medco retained." (D.I. 78 ¶ 129).

## B. Application of the Public Disclosure Bar

The public disclosure bar applies when publicly disclosed information has already, or reasonably can be expected to have, set the government "on the trail" of fraud. *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 654 (D.C. Cir. 1994). In those circumstances, subsequent FCA actions serve no purpose in vindicating the government's interests. *United States ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003). Under the pre-2010 statute, "[n]o court shall have jurisdiction over an action . . . based upon the public disclosure of allegations or transactions" in certain enumerated sources. 31 U.S.C. § 3730(e)(4)(A). Accordingly, publicly disclosed information bars a complaint when: (1) the information was publicly disclosed via one of the enumerated sources; (2) the publicly disclosed information constitutes allegations or transactions of fraud; and (3) the relator's complaint is "based upon" the public disclosures.[5] *United States ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 235 (3d Cir. 2013); *United States ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 519 (3d Cir. 2007). If the public disclosure bar applies, and the relator is not an "original source" of the information underlying his allegations of fraud, then the court is deprived of subject matter jurisdiction. *Zizic*, 728 F.3d at 239; *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 467–68 (2007).

Denis does not dispute that the several complaints and media reports identified by Medco are public disclosures in an enumerated source, or that they contain allegations or transactions of fraud. Instead, he argues that his complaint is not "based upon" the public disclosures, and, if the

---

[5]     Under the pre-2010 statute, the enumerated sources included court filings in "a criminal, civil, or administrative hearing," and reports in the news media. 31 U.S.C. § 3730(e)(4)(A) (2006).

court disagrees, that he is exempt from dismissal because he is an "original source." (D.I. 84 at 3-9).

### i. "Based Upon" Public Disclosures

For a complaint to be "based upon" the public disclosures, it "need not be 'actually derived from' public disclosures." *Zizic*, 728 F.3d at 237 (quoting *United States ex rel. Mistick PBT v. Hous. Auth. of Pittsburgh*, 186 F.3d 376, 385–88 (3d Cir. 1999)). Rather, it is sufficient if the complaint is "supported by" or "substantially similar" to the public disclosures. *Zizic*, 728 F.3d at 237. In addition, the public disclosure bar is not limited to complaints "solely based upon" public disclosures, but includes complaints "even partly based upon" a public disclosure. *Id.* at 238.

Ultimately, the court must consider whether four types of allegations distinguish Denis' complaint from the public disclosures. Denis argued in his answering brief that his complaint is not based upon the public disclosures, because the public disclosures involved a different time period and different federal programs. (D.I. 84 at 3-4). At oral argument, two other differences between the public disclosures and Denis' complaint were raised. Those differences related to the drug Toprol-XL and Medco's CIA.[6] (*See, e.g.*, D.I. 78 ¶ 142; D.I. 98 at 7-8, 35-36).

Denis' arguments regarding different time periods and different federal programs are inconsistent with the record. Schumann alleged in his fourth amended complaint that the fraudulent conduct occurred "from 1996 through at least 2007, and perhaps continuing thereafter." (D.I. 81-1, Ex. 2 ¶ 117). Denis, likewise, alleges that the fraudulent conduct occurred from 2005

---

[6]     After oral argument, the court requested supplemental briefing on three specific issues. (D.I. 99). To the extent Denis raised new arguments in his supplemental briefing that were not responsive to the questions raised in the order, the court will not consider those arguments as they should have been raised in his answering brief. *See Wilmot v. Marriott Hurghada Mgmt., Inc.*, 2016 WL 2599092, at *4 (D. Del. May 5, 2016) (explaining that the court will disregard arguments not raised in the opening and answering briefs).

to 2007. (*See, e.g.*, D.I. 78 ¶¶ 23, 109, 113-14, 119-20). Denis alleges, without any supporting facts, that the fraudulent conduct continued after the dates mentioned in the complaint. (*E.g.*, D.I. 78 ¶¶ 155, 184-85, 190-91, 196-97)). Thus, even though Denis initiated his action several years after Schumann, the operative complaints addressed the same time period, that is, 2005 to 2007).

Denis claims that none of the public disclosures contain allegations that Medco defrauded the Retiree Drug Subsidy program and Medicare Part D. (D.I. 84 at 4; D.I. 98 at 36-7). But Schumann's fourth amended complaint included Medicare Part D in the definition of "Government Programs," and proceeded to allege that AstraZeneca and Medco used sham rebates to defraud the Government Programs. (D.I. 81-1, Ex. 2 ¶ 38, 134, 239, 240). Schumann did not mention the Retiree Drug Subsidy program, but this is immaterial. First, it is sufficient if the complaint is even partly based upon the public disclosures. *Zizic*, 728 F.3d at 238. Second, the public disclosure bar "does not require that the allegations have the same statutory basis." *United States ex rel. Fine v. Sandia Corp.*, 70 F.3d 568, 572 (10th Cir. 1995); *see also United States ex rel. Feldstein v. Organon, Inc.*, 364 F. App'x 738, 742 (3d Cir. 2010) (calling the fact that public disclosures made no reference to Medicare or Medicaid, unlike relator's complaint, an "unavailing" distinction).

Unlike Schumann, Denis alleges that the fraudulent scheme was used to promote Toprol-XL in addition to Nexium and Prilosec. Medco, however, countered at oral argument that all of the public disclosures it identified need to be considered collectively, and not individually. (D.I. 98 at 6). The Third Circuit appears to not have addressed this issue, but there is case law from other circuits supporting Medco's approach. *See United States ex rel Poteet v. Medtronic, Inc.*, 552 F.3d 503, 511-12 (6th Cir. 2009) ("[T]he information suggesting fraud need not even come from the same source as long as the different sources together provide information that leads to a conclusion of fraud."); *United States ex rel. Ondis v. Woonsocket*, 587 F.3d 49, 53 (1st Cir. 2009)

13

("The two states of facts may come from different sources, as long as the disclosures together lead to a plausible inference of fraud."). Applying that case law here, the court notes that in 2003, plaintiffs in *In re Pharm. Indus. Average Wholesale Price Litig.*, MDL No. 1456, No. 01-12257 (D. Mass. July 28, 2003) filed a consolidated amended complaint alleging that PBMs, including Medco, were "pocketing spreads between actual drug costs and the prices charged to health plans" and "keeping secret discounts provided by the drug manufacturers," including AstraZeneca. (D.I. 81-4, Ex. 10 ¶ 654). One of the drugs at issue was Toprol-XL. (*Id.* at ¶ 231). Accordingly, Denis cannot distinguish his complaint from the collective allegations in the public disclosures by including allegations related to Toprol-XL.[7]

Denis' third amended complaint alleges that Medco violated the terms of the 2006 CIA. (D.I. 78 ¶¶ 21, 32-33). These allegations were not raised in the public disclosures identified by Medco, because the last of those cases was resolved in 2006 when Medco executed the CIA. Nevertheless, Denis alleges that, after executing the CIA, Medco "engag[ed] in *precisely the same* type of deceptive and fraudulent conduct which led to the CIA."[8] (*Id.* at ¶ 33 (emphasis added); *see also id.* at ¶ 21 (alleging that the purchase discount exclusion in the CIA allowed Medco "to *continue* the deceptive practice of disguising the rebates it received from manufacturers as purchase discounts" (emphasis added)). Accordingly, unless the CIA is a distinguishing factor, Denis essentially conceded that his allegations against Medco would be barred by the public

---

[7]     The complaint in *DiMattia I* also contained allegations of a fraudulent scheme between AstraZeneca and Medco involving purchase discounts for Toprol-XL. Medco does not argue that *DiMattia I* was a public disclosure, because it was under seal when Denis filed his original complaint. (D.I. 98 at 20).

[8]     In supplemental briefing, Denis, in an attempt to purportedly clarify the complaint, tries to recast these allegations. (D.I. 103 at 1-3). On a motion to dismiss, the complaint is what controls, and a court "is not compelled to accept assertions in a brief without support in the pleadings." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015).

disclosure statute, because they are not only "substantially similar" but "precisely the same." *See,*
*e.g., United States ex rel. Willis v. Southern Care, Inc.,* 2014 WL 4829279, at \*6 (S.D. Ga. Sept.
29, 2014) (holding that the references in the complaint to fraudulent conduct that was settled but
continued into a time frame were admissions that the new claims were based, in part, on public
disclosures).

There is a split among courts as to whether allegations that a defendant is continuing the
same fraudulent scheme after entering into a CIA raises the same or new allegations of fraud.
*Compare, e.g., United States ex rel. Bogina v. Medline Indus., Inc.,* 809 F.3d 365, 370 (7th Cir.
2016) (holding that allegations of continuing fraud after a settlement are substantially similar to,
and therefore, barred by, the public disclosure statute), *with, e.g., United States ex rel. Booker v.*
*Pfizer, Inc.,* 9 F. Supp. 3d 34, 46 (D. Mass. 2014) (holding that allegations that the defendants have
continued to engage in the same fraud after a settlement are not based upon the public disclosures
that lead to the settlement). The Third Circuit has not addressed the issue.

The court need not resolve this split, however, because Denis expressly disavowed that his
FCA claims are based on any alleged violation of the CIA. *(See* D.I. 105 at 1 n.1 (stating that
"Relator has not alleged that the violation of the CIA is a basis by itself for an FCA violation");
*see also* D.I. 98 at 35-37 (explaining that CIA "created . . . this hole to drive a truck through")).
This case therefore does not present the question of whether a defendant's violation of a CIA can
be a new fraud that was not publicly disclosed by prior reports. Rather, the question is whether a
relator can escape the public disclosure bar by alleging that the same fraud, already publicly
disclosed, continued into a later time period.

"Not a single circuit has held that a complete identity of allegations, even as to time, place
and manner, is required to implicate the public disclosure bar." *Judd,* 638 F. App'x at 166 (quoting

15

*United States ex rel. Boothe v. Sun Healthcare Grp., Inc.*, 496 F.3d 1169, 1174 (10th Cir. 2007)). Accordingly, courts have consistently found that a continuing fraud in a new time period is not a new fraud, but is, instead, substantially similar to prior public disclosures. *See, e.g.*, *United States ex rel. Galmines v. Novartis Pharm. Corp.*, 88 F. Supp. 3d 447, 455 (E.D. Pa. 2015) (finding that allegations are based upon public disclosures because "they allege the same underlying scheme, but as applied to a new time period"); *United States ex rel. Tahlor v. AHS Hosp. Corp.*, 2013 WL 5913627, at *8 (D.N.J. Oct. 31, 2013) ("[A] claim can be 'based upon' a public disclosure if the public disclosure concerned similar conduct that occurred in a different time period."). Because Denis has alleged the same fraud continued in a new time period, his complaint is substantially similar to and, therefore, based upon the public disclosures.

## ii. Original Source

If the relator's claims are based upon public disclosures, then the relator is barred from bringing the claim unless he is an "original source." *Atkinson*, 473 F.3d at 520. Congress defined an "original source" as "an individual who has direct and independent knowledge of the information on which the allegations are based." 31 U.S.C. § 3730(e)(4)(B) (2006). "'Independent knowledge' is knowledge that does not depend on public disclosures." *Atkinson*, 473 F.3d at 520. "'Direct knowledge' is knowledge obtained without any 'intervening agency, instrumentality or influence: immediate.'" *Id.* (quoting *United States ex rel. Stinson, Lyons, Gerlin & Bustamante v. Prudential Ins. Co.*, 944 F.2d 1149, 1160 (3d Cir. 1991)).

The Third Circuit has held that a relator does not have direct knowledge when it comes from "reviewing documents and discussing them with colleagues who participated in the underlying events." *United States ex rel. Schumann v. AstraZeneca Pharm. L.P.*, 769 F.3d 837, 848 (3d Cir. 2014); *Zizic*, 728 F.3d at 239 ("direct knowledge is based on 'first-hand' information,"

16

not second-hand information). During his tenure at Medco, Denis administered and negotiated contracts with pharmaceutical companies and solicited pharmaceutical company rebates and discounts. (D.I. 78 ¶ 47). Denis does not allege that he participated in the administration or negotiation of any contracts between Medco and AstraZeneca. Instead, most of the allegations on which Denis relies to claim that he was an original source demonstrate that he obtained his information regarding the purported scheme between Medco and AstraZeneca second-hand. (*See, e.g.* D.I. 84 at 8; D.I. 78 ¶ 108 (overhearing a Medco senior executive complaining about the need to generate more revenue through rebates); D.I. 78 ¶ 111 (learning about past conversations between Medco and AstraZeneca to offer formulary exclusivity in exchange for disguising a portion of the rebates as discounts); *Id.* at ¶ 125 (being told by a senior executive at Medco that "AstraZeneca complained to Medco that the rebates being passed through to clients were not large enough" and "AstraZeneca requested that Medco 'move' some of the rebates it was receiving in the form of purchase discounts over to the client rebate category"); *Id.* at ¶ 126 ("review[ing] the AZ Agreements shortly after they were executed" and learning information from that review).[9]

The Third Circuit has also held that a relator is not an original source where he is simply combining "direct and independent knowledge of [a company's] business strategies" with "an experienced-based belief that misconduct was occurring." *Schumann*, 769 F.3d at 848. Several of the allegations on which Denis relies to demonstrate that he was an original source simply describe Medco's business practices from which Denis asks the court to infer wrongdoing. (*See,*

---

[9]    Denis was once "in the room where it happened." He participated in contract negotiations in 2005 between Medco and Merck & Company, where Denis heard a Medco senior executive suggesting that Merck adopt the same tactics applied in recent contract negotiations for Nexium. (D.I. 84 at 8; D.I. 78 ¶¶ 132-137). Merck declined. (D.I. 78 ¶ 135). These allegation demonstrate only that Denis had first-hand knowledge of a transaction with Merck, but that knowledge does not help him, as the Merck negotiations do not form the basis of any of his claims.

17

*e.g.*, D.I. 84 at 8; D.I. 78 ¶ 112 (alleging that "Medco had a practice of creating separate agreements"); D.I. 78 ¶ 117 ("following the signing of the AZ Agreements, Medco aggressively pushed its relationship with AstraZeneca and moved Nexium to the top of its formularies"); *Id*. at ¶ 119 (being told by one Medco executive that another Medco executive's bonus depended in significant part on the success of the AstraZeneca agreements); *Id*. at ¶ 129 (being instructed to provide to clients and their auditors only contracts containing provisions for rebates passed through to the clients, and not other contracts related to monies Medco earned); *Id*. at ¶¶ 138-39 (having personal knowledge that Medco's computerized account systems were not set up to account for or report purchase discounts).

Finally, Denis' remaining allegations were made "on information and belief." (*See*, *e.g.*, D.I. 78 ¶ 119 (believing that two Medco executives "were aware of the financial benefits of the Nexium Discount Agreement scheme")). These types of allegations are categorically insufficient for original source status. *See United States ex rel. Schumann v. AstraZeneca PLC*, 2012 WL 1071133, at \*4 (E.D. Pa. Mar. 30, 2012) (pleadings based on information and belief "cannot support the requisite direct and independent knowledge to qualify as an original source"), *aff'd*, 769 F.3d 837 (3d Cir. 2014); *United States ex rel. Unite Here v. Cintas Corp.*, 2007 WL 4557788, at \*15 (N.D. Cal. Dec. 21, 2007) ("The essence of allegations made on information and belief is that they are not made based on direct, personal knowledge."). In sum, the allegations in the third amended complaint do not demonstrate that Denis had direct and independent knowledge of a fraudulent scheme between AstraZeneca and Medco that violated the FCA. Denis is therefore not

an original source. His federal claims are dismissed without prejudice under the public disclosure bar.[10]

## C. First to File

*DiMattia I* was pending when Denis filed his original complaint. On that basis, Medco argues that Denis' claims must also be dismissed pursuant to 31 U.S.C. § 3730(b)(5), the "first-to-file" rule. That statute states, "When a person brings an action under [the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). As a result, if a later claim alleges "all the essential facts" of a previously filed claim, the two are "related" and the first-to-file rule bars the later claim, even if it incorporates "somewhat different details." *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232-33 (3d Cir. 1998); *see also United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003) (stating that a second action is "related" to an earlier-filed action if it incorporates "the same material elements of fraud"). The goal of the first-to-file bar is to avoid duplicative litigation where the first action has already provided the government "sufficient notice to launch [an] investigation." *United States ex rel. Heineman–Guta v. Guidant Corp.*, 718 F.3d 28, 35–36 (1st Cir. 2013).

There are two issues the court needs to resolve before it can decide the motion to dismiss based on the first-to-file bar. First, is *DiMattia I* a "related" action when, as Denis points out, it alleges somewhat different details about the fraudulent scheme and names a different defendant.

---

[10]     The district court may dismiss with prejudice, thus denying leave to amend, only if (a) the moving party's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the non-moving party, or (b) the amendment would be futile. *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). Medco stated leave to amend should be denied, in its Reply Brief, but offered no meaningful argument in support thereof. (*See* D.I. 86 at 10).

(D.I. 84 at 10). Second, does the first-to-file bar still apply when the *DiMattia I* action is no longer pending. (*Id*. at 9 n.5).

### i. Different Details

In general, DiMattia and Denis allege the essential facts of the same fraudulent scheme. DiMattia and Denis both allege that AstraZeneca provided Medco illegal inducements, in the form of disguised discounts, in exchange for formulary placement and promotion of Nexium. (*Compare* D.I. 81-5, Ex. 18 ¶¶ 64-65, 73, *with* D.I. 78 ¶¶ 25, 111, 115). Both also allege that Toprol-XL played a role in the scheme. (*Compare* D.I. 81-5, Ex. 18 ¶ 73, *with* D.I. 78 ¶¶ 109, 144). Both allege that this conduct circumvented AstraZeneca's best price obligations, violated the anti-kickback statute, and led to the submission of false claims that defrauded the United States and state governments, because the government provided subsidies, reimbursements, or coverage through a myriad of programs or health plans based on those false claims. (*Compare* D.I. 81-5, Ex. 18 ¶¶ 1-3, *with* D.I. 78 ¶¶ 77, 109). Both allege that the conduct took place over the same period, 2004 to the present. (*Compare* D.I. 81, Ex. 18 ¶¶ 2, 72, *with* D.I. 78 ¶¶ 23, 26). In addition, both allege that in 2007, after Medco entered into the CIA, AstraZeneca agreed to pay Medco additional inducements in order to maintain Nexium's preferred placement on Medco's formulary. (*Compare* D.I. 81-5, Ex. 18 ¶ 72, *with* D.I. 78 ¶ 26).[11]

Denis argues that several details makes his claim different. (D.I. 84 at 10). According to Denis: (i) DiMattia alleged that Medco received "indirect rebates on other drugs as an incentive to promote Nexium," whereas Denis alleges that Medco received kickbacks directly on Nexium; (ii)

---

[11]     DiMattia did not allege that Medco had entered into a CIA in 2006. The failure to so allege makes no difference, as DiMattia made particularized allegations that Medco accepted illegal inducements from Astra Zeneca after 2006. That factual allegation would have put the government on sufficient notice that Medco was violating the CIA, of which the government, as a party to the CIA, was already aware.

DiMattia did not allege "secret parallel agreements undisclosed to the government;" and (iii) DiMattia did not allege that Medicare Part D and the Retirement Drug Subsidy program were defrauded as a result. (D.I. 84 at 10; D.I. 105 at 10). Denis, however, does not need to allege "precisely the same facts" as DiMattia for his claims to be related. *LaCorte*, 149 F.3d at 232. These allegations are the type of "somewhat different details" that do not bar application of the first-to-file rule. *Id.*

### ii.  Unnamed Defendants

The *DiMattia I* and *Denis* complaints do not name the same defendants. *DiMattia I* names only AstraZeneca as a defendant and *Denis* names only Medco as a defendant. The Third Circuit has not addressed whether two actions are related when they do not name the same defendants. But it has held that the statutory language of the first-to-file bar must be interpreted broadly in order to further the goals of the FCA. *See LaCorte*, 149 F.3d at 232-34 ("interpreting section 3730(b)(5) as imposing a broader bar furthers the Act's purpose by encouraging *qui tam* plaintiffs to report fraud promptly"); *United States ex rel. Ryan v. Endo Pharm., Inc.*, 27 F. Supp. 3d 615, 625 (E.D. Pa. 2014) (noting that *LaCorte* found that the plain language of the statute requires a "broad[] application of the first-to-file bar").

Relying on *LaCorte*'s broad interpretation of the first-to-file bar, other courts of appeals have held that two actions are related even if the second action names additional or different defendants. *See Poteet*, 552 F.3d at 517 ("[T]he fact that the later action names different or additional defendants is not dispositive as long as the two complaints identify the same general fraudulent scheme."); *Hampton*, 318 F.3d at 218 (holding that the first-to-file rule barred a second-action adding new defendants because the different defendants were "not differences in the material elements of the fraud"); *United States ex rel. Grynberg v. Koch Gateway Pipeline Co.*,

21

390 F.3d 1276, 1280 n.4 (10th Cir. 2004) (naming different defendants did not change the fact that the first-filed and second-filed complaints alleged the same essential claim of fraud).

Courts will find that two actions are related, despite different defendants, when the first-filed complaint provided "enough information to discover" the fraud alleged in the second-filed complaint, including the identity of the new defendants. *United States ex rel. Szymoniak v. ACE Sec. Corp.*, 2014 WL 1910876, at *5 (D.S.C. 2014); *cf. United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 380 (5th Cir. 2009) (holding that two actions with different defendants were not related, because the first-filed complaint did not provide facts from which the government could discern "industry-wide fraud," but acknowledging that the outcome may be different where the first-filed complaint provides facts regarding a "narrow or readily-identifiable group of potential wrongdoers").

There are many ways that a first-filed complaint can alert the government to the identity of the new defendants. For example, the first-filed complaint can identify a general but finite group of which the new defendants are members. *See, e.g.*, *Szymoniak*, 2014 WL 1910876, at *5 (applying the first-to-file bar to a second case with new defendants due to significant overlap in the number of named defendants and allegations in the first complaint of industry-wide fraud). Alternatively, the new defendants can be affiliates, subsidiaries, or employees of the defendants in the first-filed complaint. *See, e.g.*, *Hampton*, 318 F.3d at 218 (holding that the first-to-file rule barred a claim against a corporation, a subsidiary, and several employees of the subsidiary, even though the prior pending action named only the corporation itself); *Grynberg*, 390 F.3d at 1280 n.4 (finding that the first-to-file rule applied where a relator named as defendants some "affiliated" entities that were not listed as defendants in the prior pending lawsuit). Finally, the first-filed complaint can explicitly identify the new defendant as a member of a conspiracy to defraud the

22

government, but not name that member as a defendant. *See, e.g., United States ex rel. Bane v. Life Care Diagnostics*, 2008 WL 4853599, at \*4 (M.D. Fla. Nov. 10, 2008) (dismissing an action against Life Care under the first-to-file bar, even though Life Care had not been sued in the prior action, when "Life Care is mentioned no less than twelve times in the first nine pages" of the first-filed complaint).

Here, the *DiMattia I* complaint did not name Medco as a defendant, but it expressly identified only two participants in an alleged conspiracy to defraud the government—AstraZeneca and Medco. (D.I. 81-5, Ex. 18). The *DiMattia I* complaint named Medco no fewer than fifty times. (*Id.*). Accordingly, the allegations in the *DiMattia I* complaint provided more than enough information for the government to discover both the alleged fraud and Medco's identification as a participant in it. Under these circumstances, the court finds that the *DiMattia I* action and the *Denis* action are related for the purposes of the first-to-file bar.[12]

### i. No Longer Pending

Denis claims that even if *DiMattia I* and this action are related, his complaint cannot be dismissed under the first-to-file rule, because the *DiMattia I* action is no longer pending. (D.I. 84 at 9 n.4; D.I. 98 at 40). Courts are divided on the procedural outcome where, as here, a first-filed action was pending at the time the second action was filed, but is no longer pending. In *Kellogg Brown & Root Services, Inc. v. United States ex rel. Carter*, the Supreme Court held that dismissal

---

[12]    In reaching this conclusion, the court finds unpersuasive *In re Natural Gas Royalties Qui Tam Litigation* and its progeny. In *Natural Gas*, the court stated, "Two complaints can allege the very same scheme to defraud the very same victim, but they are not the same claim unless they share common defendants." 566 F.3d 956, 962 (10th Cir. 2009); *see also United States ex rel. Pfeifer v. Ela Med., Inc.*, 2010 WL 1380167, at \*7 (D. Colo. Mar. 31, 2010) (applying *Natural Gas* as binding precedent). This approach appears contrary to the Third Circuit's pronouncements in *LaCorte* to apply the first-to-file bar broadly and not require "identical facts." 149 F.3d at 232-34.

with prejudice was not the proper outcome. 135 S. Ct. 1970, 1979 (2015). The court explained that "an earlier suit bars a later suit while the earlier suit remains undecided but ceases to bar that suit once it is dismissed." *Id.* at 1978. "Accordingly, the dismissal of a section 3730(b)(5) claim ordinarily should be without prejudice, because the claim could be refiled once the first-filed action is no longer pending." *United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 3 (1st Cir. 2015). It appears, however, that *Carter* did not resolve the issue. Lower courts have held that "[t]he Supreme Court in *Carter* did not mandate a procedural outcome for second-filed suits whose first-filed counterparts have been dismissed; it only agreed with the Fourth Circuit that the lower court's dismissal with prejudice was in error." *United States v. Cephalon, Inc.*, 2016 WL 398014, at *3 (E.D. Pa. Feb. 2, 2016).

After *Carter*, some courts, including the court to which *Carter* was remanded, have held that dismissal without prejudice is the proper procedural outcome.[13] *See, e.g., United States ex rel. Palmieri v. Alpharma, Inc.*, 2016 WL 7324629, at *11-12 (D. Md. Dec. 16, 2016) (reversing its earlier decision in *United States ex rel. Palmieri v. Alpharma, Inc.*, 928 F. Supp. 2d 840 (D. Md. 2013)); *United States ex rel. Carter v. Halliburton Co.*, 144 F. Supp. 3d 869, 880 (E.D. Va. 2015), *modified in part*, 315 F.R.D. 56 (E.D. Va. 2016); *United States ex rel. Soodavar v. Unisys Corp.*, 2016 WL 1367163, at *7 (E.D. Va. Apr. 5, 2016); *United States ex rel. Shea v. Verizon Commc'ns, Inc.*, 160 F. Supp. 3d 16, 30 (D.D.C. 2015). These courts have noted that the "first-to-file bar prohibits bringing a 'related *action*,' not a related *complaint*." 160 F.Supp.3d at 30 (emphasis in original) (quoting 31 U.S.C. § 3730(b)(5)). "A plaintiff does not 'bring an action'

---

[13]     Several cases before *Carter* also held that dismissal without prejudice was the proper procedural outcome in these circumstances. *See, e.g., United States ex rel. Lujan v. Hughes Aircraft Co.*, 2000 WL 33775399, at *3 (C.D. Cal. Jan. 20, 2000), *aff'd*, 243 F.3d 1181 (9th Cir. 2001); *United States ex rel. Harris v. Dialysis Corp. of Am.*, 2013 WL 5505400, at *5 n.8 (D. Md. Oct. 1, 2013).

by amending a complaint, 'one brings an action by commencing suit.'" *Carter*, 144 F. Supp. 3d at 880 (internal punctuation omitted) (quoting *United States ex rel. Chovanec v. Apria Healthcare Grp., Inc.*, 606 F.3d 361, 362 (7th Cir. 2010)). Accordingly, these courts have reasoned that the plain language of the first-to-file statute requires dismissal without prejudice. *See, e.g., Shea*, 160 F. Supp. 3d at 30; *Soodavar*, 2016 WL 1367163, at \*7. This approach is consistent with Third Circuit jurisprudence holding that, "the filing of an amended complaint does not begin a new action; it is a continuation of the original action." *United States ex rel. Dhillon v. Endo Pharm.*, 617 F. App'x 208, 213 (3d Cir. 2015).

Other courts have held that the jurisdictional defect under the first-to-file bar is cured by filing an amended complaint after the first-filed action is dismissed. *See, e.g., United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1 (1st Cir. 2015); *United States ex rel. Brown v. Pfizer, Inc.*, 2016 WL 807363 (E.D. Pa. Mar. 1, 2016). As several other courts have noted, however, the reasoning in each of these cases does not hold up under scrutiny. In *Gadbois*, the First Circuit held that supplementation under Fed. R. Civ. P. 15(d) was "available to cure most kinds of kinds of defects in subject matter jurisdiction." 809 F.3d at 2. But *Gadbois* relied on "distinguishable cases" that promoted "an entirely different purpose" than the congressional intent behind the first-to-file bar. *Soodavar*, 2016 WL 1367163, at \*9; *Carter*, 315 F.R.D. at 60 (stating that *Gadbois* "failed to consider the context of the Supreme Court's analysis" in *Carter*). *Gadbois* also failed to "give sufficient weight to the plain language" of the first-to-file bar. *Carter*, 315 F.R.D. at 60; *Soodavar*, 2016 WL 1367163, at \*9 (finding *Gadbois* unpersuasive because it "failed[] to adhere to the plain text of § 3730(b)(5)," which the Supreme Court instructed should have its "ordinary meaning"). Finally, *Gadbois* considered dismissal and refiling to be a "pointless formality," but

other courts found that dismissal and refiling would implicate additional defenses.[14] *See, e.g.,*
*Carter*, 315 F.R.D. at 60 (disagreeing with the "pointless formality" rationale because dismissal
and refiling could implicate significant statute of limitations and repose problems).

In the first *Palmieri* decision, since reversed, the court held that amendment can cure a
jurisdictional defect under the first-to-file bar, because "courts look to the amended complaint to
determine jurisdiction." 928 F. Supp. 2d at 851 (quoting *Rockwell*, 549 U.S. at 474). *Palmieri*,
however, relied on language from *Rockwell*, a Supreme Court case addressing a facial challenge
to subject matter jurisdiction. *Soodavar*, 2016 WL 1367163, at \*8. The first-to-file bar is a factual
challenge to jurisdiction, not a facial challenge. *Id.* As a result, *Rockwell* was inapplicable. *Id.*
The Third Circuit has rejected *Palmieri* on similar grounds. *See Moore*, 2015 WL 1358034, at
\*14. Most other courts allowing amended complaints to cure jurisdictional defects under the first-
to-file bar have merely followed the faulty reasoning in *Palmieri* and *Gadbois*. *See, e.g., United*
*States ex rel. Kurnik v. PharMerica Corp.*, 2015 WL 1524402, at \*6 (D.S.C. Apr. 2, 2015)
(following the analysis in *Palmieri*); *United States ex rel. Boise v. Cephalon, Inc.*, 2016 WL
398014, at \*5 (E.D. Pa. Feb. 2, 2016) (following the analysis in *Palmieri* and *Gadbois*).

Finally, the court in *Brown* allowed amendment to cure a jurisdictional defect under the
first-to-file bar, but provided little analysis. 2016 WL 807363, at \*8 (E.D. Pa. Mar. 1, 2016). It
cited the Supreme Court's decision in *Carter* as grounds for granting leave to amend the complaint
and did not discuss any other case law. *Id. Carter*, however, did not mandate leave to amend.
135 S. Ct. at 1979. It simply found error in granting dismissal with prejudice.

---

[14]     In the present case, dismissal and refiling would not be a pointless formality, because it
would raise further defenses, including the fact that *DiMattia I* would now be additional
enumerated source under the public disclosure bar. (*See also* D.I. 102 at 20 (Medco claiming that
a statute of limitations defense would also arise)).

In summary, the court finds that the reasoning of cases allowing amendment to cure a jurisdictional defect under the first-to-file bar is not persuasive. Instead, the court will apply the ordinary meaning of the first-to-file bar, as the Supreme Court instructs. *See Carter*, 135 S. Ct. 1970, 1978–79 (2015) (giving the language of the first-to-file statute its "ordinary meaning" even when doing so "would produce practical problems"). Because a case ceases to be "pending" once decided or dismissed, *Kellogg*, 135 S. Ct. at 1979, a dismissal under the first-to-file bar must be without prejudice to refiling once the earlier action is no longer pending. *United States v. Unisys Corp.*, 178 F. Supp. 3d 358, 374 (E.D. Va. 2016). Thus, Denis' federal claims are dismissed without prejudice based on the first-to-file bar.

### D. Supplemental State Law Claims

In the third amended complaint, Denis alleges that the court has subject matter jurisdiction over the federal law claims based on federal question jurisdiction under 28 U.S.C. § 1331. (D.I. 78 ¶ 37). Denis does not assert diversity jurisdiction under 28 U.S.C. § 1332 for the state law claims. Accordingly, Denis is asking the court to exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367.

When the court dismisses the federal claims that are the bases of subject matter jurisdiction, as happened here, the court is left with a discretionary choice as to whether it will retain supplemental jurisdiction over the complaint's various state law claims. *New Rock Asset Partners, LP v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1508 (3d Cir. 1996); *Anderson v. ZFC Legal Title Trust I*, 2016 WL 7408846, at *5 (D.N.J. Dec. 22, 2016). The Third Circuit has held, "'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for

27

doing so.'" *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Although the parties did not address this issue, the court sees no affirmative justification for exercising supplemental jurisdiction over the state law claims, particularly where this case is still at the initial pleading stage. Accordingly, consistent with other *qui tam* actions, the court declines to exercise supplemental jurisdiction over the state law claims. *See, e.g., United States ex rel. Silver v. Omnicare, Inc.*, 2016 WL 6997010, at *1 (D.N.J. Nov. 28, 2016) (dismissing federal claims pursuant to public disclosure bar and declining to exercise supplemental jurisdiction over state law claims); *UNITED STATES v. Medco Health Systems, Inc.*, 2013 WL 6858758, at *9 (D.N.J. Dec. 30, 2013) ("Because plaintiff's federal claims are dismissed, and because this case is still at the pleading stage, the Court declines to exercise supplemental jurisdiction over his state law claims.").

## IV.   CONCLUSION

The Court dismisses the federal law claims for lack of subject matter jurisdiction pursuant to the pre-2010 version of the public disclosure bar, 31 U.S.C. § 3730(e)(4), and the first-to-file rule, 31 U.S.C. § 3730(b)(5). In addition, the court declines to exercise supplemental jurisdiction over the state law claims brought under the laws of California, Florida, and New Jersey. Accordingly, Medco's motion to dismiss (D.I. 79) is GRANTED, and the complaint is dismissed without prejudice. An appropriate order will be entered.


Dated: January ___, 2017         _____

                                 UNITED STATES DISTRICT JUDGE