IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>STATE OF CALIFORNIA,<br>STATE OF FLORIDA,<br>STATE OF NEW JERSEY, and<br>STATE OF NEW YORK,<br><br>*ex rel.,* PAUL DENIS,<br><br>          Plaintiffs,<br>    v.<br><br>MEDCO HEALTH SOLUTIONS, INC., and<br>EXPRESS SCRIPTS HOLDING COMPANY,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)  C.A. No. 11-684 (RGA)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS RELATOR'S FOURTH AMENDED COMPLAINT

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Enu Mainigi
Craig D. Singer
Jennifer Wicht
Holly M. Conley
D. Keith Clouser
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, NW
Washington, DC 20005

March 10, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION .................................................................................................... 1

ARGUMENT ............................................................................................................ 1

I.     THE FIRST-TO-FILE RULE BARS THE FOURTH AMENDED COMPLAINT. .......... 2

II.    THE PUBLIC DISCLOSURE BAR PRECLUDES THE FOURTH AMENDED
       COMPLAINT. ................................................................................................... 4

       A.     The Allegations Are "Based Upon" Public Disclosures. ........................ 4

              1.     Post-2008 allegations do not overcome the public disclosure bar. ............. 5

              2.     Allegations concerning the CIA do not overcome the public
                     disclosure bar. ............................................................................. 6

       B.     Denis Is Not an Original Source. ......................................................... 7

              1.     Denis is not an original source under the pre-PPACA statute. .................. 7

              2.     To the extent the post-PPACA statute allegedly applies, Denis is
                     not an original source. .............................................................. 8

III.   THE FOURTH AMENDED COMPLAINT DOES NOT STATE A CLAIM ON
       THE MERITS. ................................................................................................... 9

       A.     Denis Has Not Alleged a Predicate AKS Violation. ............................. 10

              1.     As a matter of law, the conduct alleged in the 4AC does not violate
                     the AKS. ................................................................................... 11

              2.     The 4AC alleges no willful violation of the AKS. ................................ 12

       B.     Denis's Remaining FCA Allegations Also Are Insufficient. ................. 14

IV.    DENIS'S STATE FALSE CLAIMS ACT CLAIMS SHOULD BE DISMISSED .......... 17

CONCLUSION ...................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Federal Cases**                                                                                                 **Page(s)**

*Alston v. Parker*,
    363 F.3d 229 (3d Cir. 2004) ...........................................................................................4, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..........................................................................................................3

*Bethel v. Jendoco Constr. Corp.*,
    570 F.2d 1168 (3d Cir. 1978)..........................................................................................11

*Charal Inv. Co. v. Rockefeller*,
    311 F.3d 198 (3d Cir. 2002) ...........................................................................................16

*Crypton Future Media, Inc. v. Hologram USA, Inc.*,
    2015 WL 5234042 (D. Del. Sept. 8, 2015)......................................................................6

*Foglia v. Renal Ventures Mgmt., LLC*,
    754 F.3d 153 (3d Cir. 2014) ...........................................................................................15

*Hagood v. Sonoma Cty. Water Agency*,
    81 F.3d 1465 (9th Cir. 1996) ..........................................................................................14

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)..........................................................................................10

*In re Chambers Dev. Co.*,
    148 F.3d 214 (3d Cir. 1998) .............................................................................................7

*Jones v. Horne*,
    634 F.3d 588 (D.C. Cir. 2011) .......................................................................................13

*Safeco Ins. of Am. v. Burr*,
    551 U.S. 47 (2007) ........................................................................................................14

*Scarano v. Cent. R.R.*, 203 F.2d 510 (3d Cir. 1953) ...................................................................7

*Sealed Appellant I v. Sealed Appellee I*,
    156 F. App'x 630 (5th Cir. 2005) ................................................................................8, 9

*U.S. Dep't of Transp. ex rel. Arnold v. CMC Eng'g*,
    567 F. App'x 166 (3d Cir. 2014) ...................................................................................14

*U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*,
    473 F.3d 506 (3d Cir. 2007) .............................................................................................7

*U.S. ex rel. DiMattia, et al. v. AstraZeneca LP,*
   C.A. No. 10-910 (D. Del.) ................................................................................2

*U.S. ex rel. Fox Rx, Inc. v. Dr. Reddy's Inc.,*
   2014 WL 6750786 (S.D.N.Y. Dec. 1, 2014) ....................................................11

*U.S. ex rel. Heineman-Guta v. Guidant Corp.,*
   718 F.3d 28 (1st Cir. 2013)................................................................................3

*U.S. ex rel. Hunt et al. v. Merck-Medco Managed Care L.L.C.,*
   No. 00-CV-737 (E.D. Pa.) ..................................................................................6

*U.S. ex rel. Judd v. Quest Diagnostics, Inc.,*
   638 F. App'x 162 (3d Cir. 2015) ........................................................................8

*U.S. ex rel. K & R L.P. v. Mass. Hous. Fin. Agency,*
   530 F.3d 980 (D.C. Cir. 2008)..........................................................................14

*U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.,*
   149 F.3d 227 (3d Cir. 1998) ..............................................................................3

*U.S. ex rel. Lamers v. City of Green Bay,*
   168 F.3d 1013 (7th Cir. 1999) ..........................................................................14

*U.S. ex rel. Lee v. Corinthian Colls.,*
   655 F.3d 984 (9th Cir. 2011) ............................................................................13

*U.S. ex rel. Petratos v. Genentech, Inc.,*
   141 F. Supp. 3d 311 (D.N.J. 2015) ...................................................................17

*U.S. ex rel. Pilecki-Simko v. Chubb Inst.,*
   2010 WL 1994794 (D.N.J. May 17, 2010)........................................................13

*U.S. ex rel. Portilla v. Riverview Post Acute Care Ctr.,*
   2014 WL 1293882 (D.N.J. Mar. 31, 2014) .......................................................17

*U.S. ex rel. Ruscher v. Omnicare, Inc.,*
   2014 WL 2618158 (S.D. Tex. June 12, 2014)...................................................17

*U.S. ex rel. Schmidt v. Zimmer, Inc.,*
   386 F.3d 235 (3d Cir. 2004) .............................................................................15

*U.S. ex rel. Schumann v. Medco,*
   No. 03-CV-5423 (E.D. Pa.) ................................................................................6

*U.S. ex rel. Whatley v. Eastwick College,*
   657 Fed. App'x 89 (3d Cir. 2016)......................................................................16

*U.S. ex rel. Wilkins v. United Health Grp., Inc.*,
  659 F.3d 295 (3d Cir. 2011) ......................................................................... 14

*U.S. ex rel. Zizic v. Q2Administrators, LLC*,
  728 F.3d 228 (3d Cir. 2013) ........................................................................... 5

*U.S. v. Goldman*,
  607 F. App'x 171 (3d Cir. 2015) ............................................................ 10, 13

*U.S. v. Shaw*,
  106 F. Supp. 2d 103 (D. Mass. 2000) ........................................................... 13

*Universal Health Servs., Inc. v. U.S. ex rel. Escobar*,
  136 S. Ct. 1989 (2016) .................................................................................. 16

**State Cases**

*Myers v. State*,
  866 So. 2d 103 (Fla. Dist. Ct. App. 2004) ................................................... 17

*State ex rel. Grayson v. Pac. Bell Tel. Co.*,
  48 Cal. Rptr. 3d 427 (Ct. App. 2006) .......................................................... 17

**Federal Statutes, Regulations, and Rules**

42 C.F.R. § 423.505 ........................................................................................ 15

42 C.F.R. § 423.308 ........................................................................................ 15

42 C.F.R. § 1001.952 ................................................................................ 11, 12

56 Fed. Reg. 35,952 ........................................................................................ 12

64 Fed. Reg. 63,518 .................................................................................. 11, 12

64 Fed. Reg. 63,529 ........................................................................................ 12

31 U.S.C. § 3729 ....................................................................................... 14, 16

31 U.S.C. § 3730 .......................................................................................... 7, 8

42 U.S.C. § 1320a-7b ...................................................................................... 10

False Claims Act ("FCA") ...................................................................... *passim*

Fed. R. Civ. P. 8(a) ...................................................................................... 9, 14

Fed. R. Civ. P. 9(b) ................................................................................ 1, 15, 16

Patient Protection and Affordable Care Act ("PPACA")
    Pub. L. No. 111-148, 124 Stat. 119 ................................................................................. 5, 7

## **State Statutes**

Cal. Gov't Code § 12652(d)(3)(A) .......................................................................................... 17

Fla. Stat. § 68.087(3) ............................................................................................................. 17

N.J. Stat. Ann. § 2A:32C-9(c) ............................................................................................... 17

**INTRODUCTION**

The Court dismissed Relator Paul Denis's Third Amended Complaint under two separate provisions of the False Claims Act ("FCA"): the first-to-file rule, and the public disclosure bar. *See* Mem. Op. ("Op."), D.I. 109, at 28 (Jan. 5, 2017).   The Court found that Denis's allegations mirrored what many plaintiffs before him had charged:  that Medco received kickbacks from AstraZeneca in the form of disguised discounts on certain medicines, which it pocketed in exchange for granting those medicines exclusive formulary status.   After amendment, the essential facts of the Fourth Amended Complaint ("4AC") are identical to those of the Third and should be dismissed for the same reasons.  *See* D.I. 111 (Jan. 26, 2017).  The only new content comprises (i) speculation that the same conduct continued after Denis left his employment with Medco, (ii) ancillary details about events already alleged, and (iii) legal argument lifted from prior briefing.  None of those amendments changes the essential character of the alleged scheme, and the Court should again dismiss this case under both the first-to-file rule and the public disclosure bar.

In addition, should the Court reach the sufficiency of Denis's allegations on the merits, the 4AC does not state a claim.  Denis's principal theory of liability is that Medco's discount arrangement with AstraZeneca violates the Anti-Kickback Statute ("AKS"), but such discounts are expressly protected by a regulatory safe harbor.  And in any event, Denis nowhere alleges that the AKS violation was knowing and willful, as the statute requires.  To the extent the 4AC also theorizes that the discounts should have been disclosed or shared with Medco's customers, that claim is vague and does not satisfy Rule 9(b).  Among many other things, the 4AC never explains what claims Medco supposedly made that were "false," or how they were false.

Because further amendment would be futile, Denis's Fourth Amended Complaint should be dismissed with prejudice.

**ARGUMENT**

I.    **THE FIRST-TO-FILE RULE BARS THE FOURTH AMENDED COMPLAINT**

The Court dismissed Denis's Third Amended Complaint under the FCA's first-to-file rule because it alleged essentially the same fraud as the earlier-filed *DiMattia* complaint.  *See U.S. ex rel. DiMattia, et al. v. AstraZeneca LP*, C.A. No. 10-910 (D. Del.).  The Court held that "DiMattia and Denis allege the essential facts of the same fraudulent scheme."  Op. 20. The 4AC alleges the same "essential facts" and should be dismissed for the same reason.

As the Court summarized, the "essential facts" Denis alleges are "that AstraZeneca provided Medco illegal inducements, in the form of disguised discounts" on Nexium and Toprol-XL, "in exchange for formulary placement"; that "the conduct took place . . . [from] 2004 to the present"; and that "in 2007, after Medco entered into the CIA, AstraZeneca agreed to pay Medco additional inducements[.]"  Op. 20.  These essential facts are repeated in the 4AC.  *See, e.g.*, 4AC ¶ 107 (disguised discounts), ¶ 23 (on Nexium and Toprol), ¶ 172 (exchanged for formulary placement), ¶¶ 25, 113 ("from 2005 to the present"), ¶ 134 (with new payments after the CIA). The same facts require the same finding: "the *DiMattia I* action and the *Denis* action are related for the purposes of the first-to-file bar."  Op. 23.

Denis's amendments offer only ancillary details.  Far from changing the essential character of his allegations, some of the new details purport to confirm the same essential features of the alleged scheme that he has always alleged.  *See, e.g.*, 4AC ¶ 165 (quoting Medco email on a "purchase discount . . . margin" in addition to rebates), ¶ 154 (stating Denis's belief that "Medco was requiring drug companies to pay kickbacks in the form of purchase discounts in order [to] push their drugs on its formularies").  Other details concern private health plans rather than the government, and are thus irrelevant to the FCA.  *See, e.g.*, 4AC ¶ 164 ("scheme . . . not only affected governmental programs, but [also] private organization[s]").  In any event, new

2

details cannot save the claims asserted in the 4AC. "[T]he first-to-file rule bars the later claim, even if it incorporates 'somewhat different details.'" Op. 19 (quoting *U.S. ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 232-33 (3d Cir. 1998)).

Dismissing the 4AC would further "[t]he goal of the first-to-file bar[,]" which is to "provide[] the government 'sufficient notice to launch an investigation.'" Op. 19 (quoting *U.S. ex rel. Heineman-Guta v. Guidant Corp.*, 718 F.3d 28, 35-36 (1st Cir. 2013)). The new details in the 4AC did not alert the government to a new fraudulent scheme. Conversely, the absence of those details in the First, Second, and Third Amended Complaints did not prevent the government from investigating Denis's alleged scheme from 2009 until 2013, when it declined to intervene. *See* 4AC ¶ 46 (stating that Denis made his first disclosure in 2009).

The 4AC also contains pure legal conclusions, in effect "alleging" that the first-to-file rule does not apply. *See, e.g.*, 4AC ¶ 201 (asserting that the *DiMattia* "complaint[] do[es] not disclose the scheme which Relator here has detailed"), ¶ 201 ("Until Relator disclosed this scheme . . . , the Government was not on the trail of the fraud."). But "courts are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Denis already argued for those legal conclusions, and the Court disagreed with them, based on the same essential facts he alleges now. His "allegations" disagreeing with the Court's legal conclusions cannot displace the Court's ruling.

The 4AC also "alleges" a legal argument Denis made in prior briefing: He claims that "the *DiMattia* relators . . . and Medco have all acknowledged that the fraud alleged in this action is a materially different scheme" because the parties did not settle this action as part of the *DiMattia* settlement agreement." 4AC ¶ 206. This argument is wrong on multiple levels. First, the settlement agreement in *DiMattia* in no way "acknowledges" or even suggests that Denis's

3

case alleges "a materially different scheme."   Medco made no admission in the settlement agreement that any non-settled cases were materially different from *DiMattia*.   Second, Denis's inference that his case must be different or else it would have been included in the settlement is ill-founded.   The government is not obligated to settle all pending litigation that alleges "the essential facts of the same fraudulent scheme," and settling one action does not mean that another action necessarily alleges different facts.   Third, if the government had wished to avoid the first-to-file bar in this case, it could have intervened, as the first-to-file bar does not apply to government-intervened cases.

As the Court has held, a first-to-file defect requires dismissal.   Op. 27.   Dismissal this time should be without leave to amend.   Denis had an opportunity to amend, for a fourth time, in light of the Court's application of the first-to-file rule, and any further amendment would be futile.   *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (court need not "permit a curative amendment" where it "would be inequitable or futile").

## II.    THE PUBLIC DISCLOSURE BAR PRECLUDES THE FOURTH AMENDED COMPLAINT

The Court also dismissed the Third Amended Complaint under the FCA's public disclosure bar because the scheme Denis alleges "is substantially similar to and, therefore, based upon the public disclosures" in prior litigations against Medco, and because "Denis is . . . not an original source."   Op. 16, 18-19.   The 4AC's added allegations do not impair these conclusions.

### A.    The Allegations Are "Based Upon" Public Disclosures

Denis's Fourth Amended Complaint alleges the same essential fraud as the Third:   that Medco and AstraZeneca allegedly schemed to exchange hidden rebates on Nexium and Toprol-XL in exchange for formulary preferences.   As the Court found, this scheme "is substantially similar to and, therefore, based upon the public disclosures" contained in "several complaints

and media reports identified by Medco." Op. 11, 16. Substantial similarity is all the public disclosure bar requires. *Id.*; *U.S. ex rel. Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 235 (3d Cir. 2013). "[T]he public disclosure bar is not limited to complaints 'solely based upon' public disclosures, but includes complaints 'even partly based upon' a public disclosure." Op. 12 (quoting *Zizic*, 728 F.3d at 238).[1] None of Denis's additions in the 4AC changes the basic character of the alleged scheme.

### 1. Post-2008 allegations do not overcome the public disclosure bar

Denis left Medco's employment in 2008, and virtually all of his allegations understandably concern the time period before that date. That time period places his allegations squarely amid the prior public disclosures. As the Court noted, a prior lawsuit, *Schumann*, "alleged . . . that the fraudulent conduct occurred from 1996 through at least 2007, and perhaps continuing thereafter." Op. 12 (internal quotation marks omitted).

The 4AC now alleges various snippets from *after* 2008, apparently contending that later-occurring conduct would distinguish his alleged scheme from earlier, publicly disclosed schemes. The Court already considered and rejected that argument: A claim that "the same fraud continued in a new time period" does not defeat substantial similarity under the public disclosure bar. Op. 16. That ruling applies equally to any conduct occurring after March 23, 2010, the effective date of the Patient Protection and Affordable Care Act ("PPACA"). As relevant here, PPACA removed from the list of qualifying sources of public disclosures any cases to which the federal government was not a party. *See U.S. ex rel. Moore*, 812 F.3d 294,

---

[1]      Denis's Third Amended Complaint expressly alleged that the scheme is "not only 'substantially similar to' but 'precisely the same'" as the one described in prior public disclosures. Op. 15 (quoting 3AC ¶ 33). The Court thus found that "Denis essentially conceded that his allegations against Medco would be barred by the public disclosure statute[.]" *Id.* In the 4AC, Denis alleges the same facts but deletes the conclusion. *See* 4AC ¶ 36 (replacing "precisely the same" fraudulent conduct with "other" fraudulent conduct). Denis's "amendment" cannot erase the effect of his concession, which was based on the same facts he now alleges.

299 (3d Cir. 2016). The Court already determined that "the relevant allegations are essentially redundant of the claims in *Schumann* and *Hunt*[,]" federal cases in which the government *was* a party. Op. 3 n.1; *see also U.S. ex rel. Schumann v. Medco*, No. 03-CV-5423 (E.D. Pa.); *U.S. ex rel. Hunt et al. v. Merck-Medco Managed Care L.L.C.*, No. 00-CV-737 (E.D. Pa.).

### 2. Allegations concerning the CIA do not overcome the public disclosure bar

Denis's Third Amended Complaint appeared to allege that Medco somehow violated its 2006 Corporate Integrity Agreement ("CIA") with the government by characterizing rebates as purchase discounts to avoid reporting them – even though it also alleged that the CIA by its terms *permitted* Medco to collect and not report the same purchase discounts. When Medco pointed out this inconsistency, Denis responded that he *was not alleging that his FCA claims were based on a violation of the CIA*. *See* Opp'n, D.I. 84, at 16 n.8. The Court relied on that representation in dismissing the Third Amended Complaint. Op. 15 ("Denis expressly disavowed that his FCA claims are based on any alleged violation of the CIA.").

Denis's new allegations appear to take the same tack, alleging not that Medco violated the CIA but rather that Medco somehow exploited a "loophole" in the CIA to continue the preexisting alleged fraudulent scheme. *See* 4AC ¶ 110 (alleging "fraud by omission"), ¶ 105 ("manipulation" of the CIA), ¶ 162 ("loophole in the CIA"). These allegations add nothing to the basic scheme charged in the Third Amended Complaint and cannot defeat substantial similarity for public disclosure purposes.[2]

---

[2] To the extent Denis were to change course and argue a violation of the CIA, he would be estopped by his prior representation. Where "the court relied on [a party's] representations in reaching its decision, they were binding as a matter of judicial estoppel." *Crypton Future Media, Inc. v. Hologram USA, Inc.*, 2015 WL 5234042, at *3 (D. Del. Sept. 8, 2015) (Andrews, J.). In the Third Circuit, "[t]he party asserting the estoppel is not required to demonstrate detrimental reliance upon the prior representation . . . [and] the party to be estopped need not have benefited from its earlier position." *In re Chambers Dev. Co.*, 148 F.3d 214, 229 (3d Cir. 1998). The

### B.      Denis Is Not an Original Source

In considering Denis's claim that he is an "original source," the Court concluded that under the applicable pre-2010 version of the FCA, the Third Amended Complaint had not alleged facts showing Denis's "direct and independent" knowledge of fraud. Op. 18. The Court further held that the post-2010 "PPACA" version of the FCA did not apply because Denis had not sufficiently alleged fraud extending past 2007, let alone 2010. Op. 10. The allegations in the 4AC should change neither conclusion.

### 1.      Denis is not an original source under the pre-PPACA statute

The pre-PPACA original source exception to the public disclosure bar requires a relator to demonstrate "direct" and "independent" knowledge of fraud. 31 U.S.C. § 3730(e)(4)(B) (2006). "Independent knowledge" cannot "depend on public disclosures." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 520 (3d Cir. 2007). "Direct knowledge" must be acquired "without any intervening agency, instrumentality or influence[.]" Op. 16 (internal quotation marks omitted). As with the Third Amended Complaint, Denis's 4AC "does not allege that he participated in the administration or negotiation of any contracts between Medco and AstraZeneca." Op. 17. He continues to "simply describe Medco's business practices from which Denis asks the court to infer wrongdoing." *Id.*

This Court also held that allegations "on information and belief" are "categorically insufficient for original source status." Op. 18. Denis's response was not to assert new allegations of fact (because he cannot), but rather to delete the words "information and belief" wherever it formerly appeared in the complaint, while retaining the same underlying allegations

---

doctrine is designed to prevent litigants from "playing 'fast and loose with the courts.'" *Scarano v. Cent. R.R.*, 203 F.2d 510, 513 (3d Cir. 1953) (citation omitted).

of fact.  *See, e.g.*, 4AC ¶¶ 19, 31.  Denis has not provided any factual basis for his global

deletion, or any basis for concluding that he has "direct" knowledge of any of these allegations.

### 2. To the extent the post-PPACA statute allegedly applies, Denis is not an original source

The post-PPACA statute requires an original source to have "knowledge that is

independent of and materially adds to the publicly disclosed allegations or transactions."

31 U.S.C. § 3730(e)(4)(B) (2010).  The Third Circuit has interpreted the phrase "materially

adds" to mean that "a relator must contribute *significant additional information* to that which has

been publicly disclosed so as to improve its quality."  *Moore*, 812 F.3d at 306 (emphasis added).

A relator satisfies this requirement if his information "adds in a significant way to the *essential*

*factual background*: 'the who, what, when, where and how of the events at issue.'"  *Id*. at 307

(emphasis added) (citation omitted).

The amended original source standard applies to conduct beginning after March 23, 2010.

*See* Op. 9 ("courts apply the version of the statute that was in effect 'at the time the alleged

conduct in the Complaint took place'" (quoting *U.S. ex rel. Judd v. Quest Diagnostics, Inc.*, 638

F. App'x 162, 165 (3d Cir. 2015)).  The only "conduct" Denis alleges after that date is that

Medco maintained purchase agreements with AstraZeneca until 2013.  *See* 4AC ¶ 111 (Nexium

agreement "renewed . . . again in 2011"), ¶ 166 (Nexium and Toprol agreements were in effect

as of June 25, 2013).  But Denis does not (and cannot) allege anything material about that

conduct – after all, Denis left Medco in 2008.  *See Sealed Appellant I v. Sealed Appellee I*, 156 F.

App'x 630, 633 (5th Cir. 2005) (affirming dismissal because "the allegations of fraud outside of

that [employment] time frame are based on Appellant's extrapolations and good faith belief").

He does not allege the details of any allegedly fraudulent post-2010 conduct; indeed, he alleges

nothing whatsoever to distinguish any supposed "fraud" in the renewed agreements from the earlier agreements.

Denis even admits that the source of his information after 2010 is not his "original" access to Medco's inner workings (he had none) but *public sources*. The 4AC alleges that after "[he] left Medco in 2008, [he] monitored periodically public announcements made by Medco and later Express Scripts." 4AC ¶ 167. Whatever Denis learned from public announcements cannot constitute an undisclosed scheme. When he alleges that "[t]o Relator's knowledge, all of the purchase discount agreements that were in place when he left Medco have been renewed and are currently in place in one form or another," *id.*, what he actually alleges is that no one told him whether the agreements continued, and if so, in what form. Such an allegation is no different from allegations based "upon information and belief." Without more, Denis has not "add[ed] in a significant way to the essential factual background: 'the who, what, when, where and how of the events at issue.'" *Moore*, 812 F.3d at 307 (citation omitted).

Denis's complaint should be dismissed with prejudice. Denis has now had the benefit of the Court's analysis, and his amendment confirms that he can allege only a scheme that was publicly disclosed and for which he is not an original source. Further amendment would be "futile." *Alston*, 363 F.3d at 235.

## III.   THE FOURTH AMENDED COMPLAINT DOES NOT STATE A CLAIM ON THE MERITS

In its motion to dismiss the Third Amended Complaint, Medco argued that the allegations did not state a claim under Rules 8(a) and 9(b). *See* Defs.' Br., D.I. 80, at 12-19; Defs.' Reply, D.I. 86, at 6-10. The Court did not reach these arguments because it granted Medco's motion on jurisdictional grounds. *See* Op. 1. Should the Court now have occasion to reach these

arguments, it should dismiss the 4AC because it does not state a claim under the FCA and does not plead fraud with particularity.

### A.  Denis Has Not Alleged a Predicate AKS Violation

Denis alleges that Medco violated the Anti-Kickback Statute ("AKS"), which allegedly rendered Medco's claims for reimbursement for AstraZeneca products "false" for FCA purposes. This claim fails at the threshold because Medco did not violate the AKS.  The AKS is a criminal statute, which, as a general matter, prohibits kickbacks in return for steering Medicare or Medicaid patients to particular goods or providers.  42 U.S.C. § 1320a-7b(b)(1).  Because the AKS can be read to proscribe a broad range of conduct, Congress and the Office of Inspector General ("OIG") of the U.S. Department of Health & Human Services ("HHS"), which implements the statute, have promulgated "safe harbors" that immunize certain business arrangements from AKS scrutiny.  One of these is the "discount" safe harbor, which is discussed below.

As a criminal law, the AKS carries a high standard of *mens rea*, requiring proof that the defendant acted "knowingly and willfully."  *Id.*  To possess that specific intent, the defendant must have "kn[own] his conduct was unlawful and intended to do something the law forbids." *U.S. v. Goldman*, 607 F. App'x 171, 174 (3d Cir. 2015).  At the motion-to-dismiss stage, the complaint must allege "specific facts that give rise to a strong inference that the defendant possessed the requisite intent."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997) (internal quotation marks omitted).  Thus, Denis was obliged to allege facts showing both that the AstraZeneca purchase discounts were kickbacks in violation of the AKS *and* that Medco *knew* they were illegal kickbacks.

1.  **As a matter of law, the conduct alleged in the 4AC does not violate the AKS**

Denis has not alleged any AKS violation, much less a "knowing and willful" one.  On the contrary, his own allegations demonstrate that the agreements between AstraZeneca and Medco are exempt from AKS scrutiny because they fall within the "discount safe harbor."  42 C.F.R. § 1001.952(h)(5).  Although safe harbors typically are described as affirmative defenses, "an affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent [on] the face of the complaint."  *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978) (emphases omitted).  Courts have not hesitated, therefore, to dismiss complaints that did not allege facts that take a defendant's conduct out of the protections of a safe harbor.  *See, e.g.*, *U.S. ex rel. Fox Rx, Inc. v. Dr. Reddy's Inc.*, 2014 WL 6750786, at *8 (S.D.N.Y. Dec. 1, 2014) (finding that relator failed to state a claim for relief under the AKS where relator "has not alleged that any of [the safe harbor] conditions did not apply").  Here, all three requirements of the discount safe harbor are satisfied:

*First*, the purchase discounts are "a reduction in the amount . . . charged for an item . . . based on an arms-length transaction."  42 C.F.R. § 1001.952(h)(5).  The 4AC alleges that the AstraZeneca agreements provided Medco with a percentage reduction in the wholesale acquisition prices of Nexium and Toprol.  4AC ¶¶ 126-127.  Although Denis argues that only "prompt payment discounts" qualify as "discounts" for some purposes, *see* 4AC ¶¶ 136-139, that distinction does not exist in the AKS safe harbor, which defines a "discount" simply as a "reduction in the amount a buyer  . . . is charged."  42 C.F.R. § 1001.952(h)(5).[3]  In fact, OIG,

---

[3]     Even were Denis correct that the "purchase discounts" Medco received from AstraZeneca were really "rebates," *see* 4AC ¶¶ 136-139, they would in any event be covered by the safe harbor.  "Rebates" are defined as discounts received *after* the time of sale.  *See* 64 Fed. Reg. 63,518 (Nov. 19, 1999).  The only additional requirement for rebates to gain safe harbor protection is that their "terms" must be fixed.  "'[T]erms' refers to the methodology that will be

which promulgated the safe harbor, has made clear that prompt payment discounts are *a form* of discount but not the *only* form of discount.  *See* 56 Fed. Reg. 35,952, 35,979 (July 29, 1991) ("A large number of commenters urged the OIG to expand this safe harbor provision to include other types of discount mechanisms . . . [such as] prompt pay discounts. . . .  With respect to prompt pay discounts . . . [n]o change is necessary . . . .").

*Second*, the purchase discounts are "made at the time of the sale of the good."  42 C.F.R. § 1001.952(h)(1)(iii)(A).  Denis alleges that the purchase discounts were price reductions at sale: "[M]erely by paying for Nexium and Toprol-XL, Medco received the discounts."  4AC ¶ 138.

*Third*, the government did not request that Medco report the purchase discounts.  The safe harbor's final requirement is that the buyer must fully and accurately report the discount, *but only if requested* by the Secretary of HHS or a State agency.  42 C.F.R. § 1001.952(h)(1)(iii)(B).  HHS explicitly removed any affirmative disclosure requirement in 1999.  *See* 64 Fed. Reg. 63,518 (Nov. 19, 1999).  The 4AC alleges that the government specifically agreed to carve such discounts out of the CIA, showing that it *did not* request the reporting of purchase discounts. 4AC ¶¶ 15-16.[4]

### 2.    The 4AC alleges no willful violation of the AKS

Even had Denis plausibly alleged that the purchase discounts were improper under the AKS (he has not), the 4AC still would not state a claim because it does not allege that Medco *willfully* violated the law.  The Third Circuit has held that conduct is "willful" for the purposes of the AKS only when the defendant "knew his conduct was unlawful and intended to do something

---

used to calculate the rebate (*e.g.*, a percentage of sales or a fixed amount per item purchased during a given period of time)."  64 Fed. Reg. at 63,529.  Here, the terms were fixed by contract. *See* 4AC ¶¶ 23-24.

[4]    The 4AC alleges that *clients* requested purchase discount information, 4AC ¶ 143, but it does not allege that *the government* made such a request; the CIA shows the opposite, 4AC ¶¶ 15-16.

the law forbids." *Goldman*, 607 F. App'x at 174.   Denis wholly fails to allege this mental state, which is reason enough to dismiss Denis's claim.   *See Jones v. Horne*, 634 F.3d 588, 602 (D.C. Cir. 2011) (affirming dismissal where "[t]he complaint contains not even a conclusory allegation" of "any actual or constructive knowledge").   What Denis does allege, repeatedly, is that Medco received "what *amounted to* under-the-table kickbacks."   4AC ¶ 37 (emphasis added).   But mere receipt of funds cannot satisfy the *scienter* requirement.   *See, e.g.*, *U.S. v. Shaw*, 106 F. Supp. 2d 103, 120 (D. Mass. 2000) ("Offering or receiving discounts in order to compete for business does not alone mean that the entity 'knowingly and willfully' induced or arranged for referrals [in violation of the AKS].").

Even if Denis had acknowledged his burden to show a knowing and willful mental state, the 4AC pleads no facts to support such a claim.   In light of the discount safe harbor, discussed above, Medco's conduct was legal – but even if it had not been, there is no way Medco could have *known* that.   A person cannot knowingly violate the law where the applicability of that law to his conduct is unsettled.   An "attempt to comply with the regulatory safeharbor forecloses the finding of scienter required for a False Claims Act claim."   *U.S. ex rel. Pilecki-Simko v. Chubb Inst.*, 2010 WL 1994794, at *3 (D.N.J. May 17, 2010), *aff'd*, 443 F. App'x 754 (3d Cir. 2011); *see also U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997 (9th Cir. 2011) (to allege fraudulent intent, relators "must allege that . . . [defendant] knew . . . that its Compensation Program did not fall within the DOE Safe Harbor Provision").   Even in FCA cases when the AKS is not implicated, numerous courts have held that disputed legal issues cannot create the predicate for a "false" claim under the FCA's mental state of "recklessness," which is less

13

demanding than the AKS's "knowing and willful" standard.[5]  As a matter of law, one cannot intentionally violate a law that does not clearly prohibit the conduct.  *Safeco Ins. of Am. v. Burr*, 551 U.S. 47, 69 (2007) (no "willfulness" where defendant's "reading of the statute, albeit erroneous, was not objectively unreasonable").

### B.     Denis's Remaining FCA Allegations Also Are Insufficient

In addition to the FCA claims based on violations of the AKS, Denis alleges that by not disclosing the purchase discounts, Medco caused false claims to be submitted that "did not reflect the true cost of those drugs[,]" 4AC ¶¶ 178, 181, 220-225; that Medco made false statements to avoid an obligation to pay money, 4AC ¶¶ 224-225; and that Medco engaged in conspiracy, 4AC ¶¶ 226-227.  These allegations, too, do not state a claim.

Absent a violation of the AKS, Denis cannot show that Medco submitted any false claims or statements to the Government under subsections (a)(1) or (a)(2) of the FCA.  A prima facie violation of 31 U.S.C. § 3729(a)(1) requires proof that "(1) the defendant . . . caused to be presented to an agent of the United States a claim for payment; (2) the claim was false or fraudulent; and (3) the defendant knew the claim was false or fraudulent."  *U.S. ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 304-05 (3d Cir. 2011) (internal quotation marks omitted).  A defendant violates subsection (a)(2) when he "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."  31 U.S.C. § 3729(a)(2) (2006).

---

[5]      *See, e.g.*, *U.S. Dep't of Transp. ex rel. Arnold v. CMC Eng'g*, 567 F. App'x 166, 171 (3d Cir. 2014) (citing *U.S. ex rel. K & R L.P. v. Mass. Hous. Fin. Agency*, 530 F.3d 980, 984 (D.C. Cir. 2008) (holding that disagreement about ambiguous language means "there is no genuine issue as to whether [the defendant] knowingly presented false claims")); *U.S. ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999) ("[D]ifferences in interpretation growing out of a disputed legal question are similarly not false under the FCA."); *Hagood v. Sonoma Cty. Water Agency*, 81 F.3d 1465, 1478-79 (9th Cir. 1996) ("At most, [the relator] has shown that the [defendant] took advantage of a disputed legal issue.  This . . . is not enough.").

Lawsuits under the FCA sound in fraud.  To state a claim, therefore, Denis not only must plead facts plausibly showing entitlement to relief, Fed. R. Civ. P. 8(a), he also must "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); *U.S. ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 242 n.9 (3d Cir. 2004).  In the context of the FCA, Denis must plead "particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 156 (3d Cir. 2014) (internal quotation marks omitted).

Denis generally alleges that Medco "knowingly submitted" unspecified "false records or statements to clients and to the Government, on behalf of clients . . . , about the cost of drugs, which did not reflect the true cost of those drugs," because they did not disclose certain purchase discounts, causing those clients "to submit false reimbursement claims to the Government."  4AC ¶ 178.  But Denis does not allege what Medco supposedly said about the cost of its drugs, or why those statements were false.

Nor does Denis adequately allege how any statutory or regulatory duty went unfulfilled in a way that would make any claims (whatever they are) false.  Denis alleges that Medco's clients who are Medicare Part D Plan sponsors had regulatory obligations to report the cost of drugs.  4AC ¶¶ 71-72 (citing 42 C.F.R. §§ 423.505, 423.308).  But Denis must do far more than echo the regulation's language to satisfy Rule 9(b).  Denis does not:

- identify any specific representations purportedly made in any claims submitted by Medco or any other entity;

- identify any certification purportedly made by any Part D Plan sponsor, specify what false information was purportedly certified as true, or allege that any such certification was a condition of payment;

- explain what "records or statements" Medco purportedly made, what they purported to represent, and what they actually contained;

15

- identify to whom or when the "records or statements" were delivered, either to clients or to the government;

- allege that any Medco clients relied on any "record or statement" in making any certification or submitting any report; or

- allege any facts showing that – if any claims were false – Medco *knew* that.

Even if Denis had sufficiently alleged a "false" claim (he has not), he has not sufficiently alleged that any supposed falsity was *material*. *See Universal Health Servs., Inc. v. U.S. ex rel. Escobar*, 136 S. Ct. 1989, 1996 (2016) (requiring allegation that defendant "knowingly violated a requirement that [it] knows is material to the Government's payment decision"). The materiality standard is "demanding," *id.* at 2003, and it applies at the motion to dismiss stage, *id.* at 2004 n.6. Denis thus was required to allege facts showing that any claimed falsity would affect "the likely or actual behavior" of the government in deciding whether to pay the claim. *Id.* at 2002 (internal quotation marks omitted); *see also, e.g.*, *U.S. v. Fulton Cty., Georgia*, 2016 WL 4158392, at *8 (N.D. Ga. Aug. 5, 2016) (dismissing complaint after *Escobar* where relator alleged that statutory compliance was a condition of payment under defendant's contract with the government but did not allege "other facts establishing materiality"). The 4AC alleges no such facts.

Denis thus has not pled "the who, what, when, where and how of the events" as required by Rule 9(b). *Charal Inv. Co. v. Rockefeller*, 311 F.3d 198, 217 (3d Cir. 2002) (internal quotation marks omitted); *see also U.S. ex rel. Whatley v. Eastwick College*, 657 Fed. App'x 89, 94-96 (3d Cir. 2016) (affirming dismissal of FCA claims where defendant "does not identify any misrepresentation made by the [defendant] to the government with respect to the cost of [the goods provided] (factual falsity) or any statute, regulation, or contractual provision that requires the [defendant] to set those fees within a certain range (legal falsity)").

Nor can Denis recast his affirmative claims under the FCA as "reverse false claims" under subsection (a)(7).  That section imposes liability on one who knowingly uses a false record "to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(7) (2006).  But (a)(7) does not permit a redundant claim that a defendant failed to repay money falsely claimed under subsections (a)(1) and (a)(2).  *See U.S. ex rel. Ruscher v. Omnicare, Inc.*, 2014 WL 2618158, at *27 (S.D. Tex. June 12, 2014); *U.S. ex rel. Petratos v. Genentech, Inc.*, 141 F. Supp. 3d 311, 322 (D.N.J. 2015) (claim that a defendant "failed to refund the false claims that the government paid" does not state a separate claim under (a)(7) (internal quotation marks omitted)).  Instead, Denis must identify a separate, independent obligation to pay the government.  Denis does not do so here.

Finally, Denis does not state a claim under subsection (a)(3), the conspiracy provision, for all of the same reasons discussed above, and because he nowhere alleges facts showing that Medco had "the specific intent of defrauding the Government."  4AC ¶ 227.

## IV.    DENIS'S STATE FALSE CLAIMS ACT CLAIMS SHOULD BE DISMISSED

The above arguments also mandate dismissal of Denis's claims under the California, Florida, and New Jersey False Claims Acts.  Each of these State FCAs closely parallels the federal FCA, and courts have expressly followed federal case law in interpreting them.[6] Therefore, the Court should dismiss the State FCA claims with prejudice.  In the alternative, if the Court dismisses the Federal FCA claims, the Court should decline to exercise supplemental jurisdiction over the State FCA claims.  *See* Op. at 27-28.

---

[6]    *See, e.g.*, *State ex rel. Grayson v. Pac. Bell Tel. Co.*, 48 Cal. Rptr. 3d 427, 430 n.3 (Ct. App. 2006); *Myers v. State*, 866 So. 2d 103, 104 (Fla. Dist. Ct. App. 2004); *U.S. ex rel. Portilla v. Riverview Post Acute Care Ctr.*, 2014 WL 1293882, at *9 (D.N.J. Mar. 31, 2014).  All three State FCAs impose public disclosure bars substantively identical to the federal FCA.  *See* Cal. Gov't Code § 12652(d)(3)(A); Fla. Stat. § 68.087(3); N.J. Stat. Ann. § 2A:32C-9(c).

## <u>CONCLUSION</u>

For the reasons discussed above, the Fourth Amended Complaint should be dismissed with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

_____

Jack B. Blumenfeld (#1014)
Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
rsmith@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Enu Mainigi
Craig D. Singer
Jennifer Wicht
Holly M. Conley
D. Keith Clouser
WILLIAMS & CONNOLLY LLP
725 Twelfth St. NW
Washington, DC 20005

March 10, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on March 10, 2017, upon the following in the manner indicated:

William E. Olson                                        *VIA ELECTRONIC MAIL*
U.S. DEPARTMENT OF JUSTICE - CIVIL DIVISION
P.O. Box 261, Ben Franklin Station
Washington, DC  20044
*Attorneys for Plaintiff United States of America*

Shannon Thee Hanson                                     *VIA ELECTRONIC MAIL*
U.S. ATTORNEY'S OFFICE
The Nemours Building
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE  19899-2046
*Attorneys for Plaintiff United States of America*

Tiphanie P. Miller                                      *VIA ELECTRONIC MAIL*
DELAWARE DEPARTMENT OF JUSTICE
MEDICAID FRAUD CONTROL UNIT
900 North King Street, 4th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs State of Florida, State of
New Jersey and State of California*

Mark E. Critchley                                       *VIA ELECTRONIC MAIL*
DELAWARE DEPARTMENT OF JUSTICE
MEDICAID FRAUD CONTROL UNIT
900 North King Street, 4th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff State of New Jersey*

Jeffrey S. Goddess                                              *VIA ELECTRONIC MAIL*
ROSENTHAL, MONHAIT & GODDESS, P.A.
Mellon Bank Center, Suite 1401
P.O. Box 1070
919 Market Street
Wilmington, DE  19899-1070
*Attorneys for Relator*

David S. Stone                                                 *VIA ELECTRONIC MAIL*
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ  07922
*Attorneys for Relator*

                                        */s/ Rodger D. Smith II*
                                        _____
                                        Rodger D. Smith II (#3778)